## SETTLEMENT AGREEMENT

### I.
### PARTIES

This Settlement Agreement (Agreement) is entered into among the following:

(1)    the United States of America, acting through the United States Department of

Justice and on behalf of the Office of Inspector General (OIG-HHS) of the Department of

Health and Human Services (HHS), collectively referred to herein as "the United States;"

(2)    the Texas Attorney General's Office (OAG) and the Texas Health and Human

Services Commission (HHSC), collectively referred to herein as "Texas;"

(3)    Cecilia Guardiola;

(4)    CHRISTUS Health;

(5)    CHRISTUS Spohn Health System Corporation;

(6)    CHRISTUS Spohn Hospital Corpus Christi - Shoreline;

(7)    CHRISTUS Spohn Hospital Corpus Christi - Memorial;

(8)    CHRISTUS Spohn Hospital Corpus Christi - South;

(9)    CHRISTUS Spohn Hospital Alice;

(10)    CHRISTUS Spohn Hospital Beeville; and

(11)    CHRISTUS Spohn Hospital Kleberg.

(All of the above hereafter referred to as "the Parties"); through their authorized representatives.

In this Agreement: Cecilia Guardiola is referred to as either "Guardiola" or "Relator;"

the United States and Texas are collectively referred to as "the Government." The entities

identified in Nos. (4) through (11) above are collectively referred to as the "CHRISTUS Parties."

1



## II.
## PREAMBLE

As a preamble to this Agreement, the Parties agree to the following:

A.      The Relator is currently a resident of Nevada. From December 2005 to April 2007, Relator was employed by CHRISTUS Spohn Health System Corporation (CHRISTUS Spohn) at CHRISTUS Spohn Hospital Corpus Christi - Shoreline as its director of case management.

B.      CHRISTUS Health is a Texas nonprofit corporation which provides health care services through numerous hospitals and other facilities in six states and in Mexico. CHRISTUS Spohn is a Texas nonprofit corporation and is a wholly-owned subsidiary of CHRISTUS Health. CHRISTUS Spohn operates six hospitals along the Texas Gulf Coast, including: CHRISTUS Spohn Hospital Corpus Christi - Shoreline;   CHRISTUS Spohn Hospital Corpus Christi - Memorial; CHRISTUS Spohn Hospital Corpus Christi - South; CHRISTUS Spohn Hospital Alice; CHRISTUS Spohn Hospital Beeville; and CHRISTUS Spohn Hospital Kleberg (collectively the "Hospitals").

C.      Relator filed this *qui tam* on behalf of the Government on February 29, 2008 in the United States District Court for the Southern District of Texas captioned: *The United States of America; the State of Texas; ex rel. Cecilia Guardiola v. Christus Health, et al.;* Cause No. H-08-CV-667.  In that Complaint, Relator alleged that the CHRISTUS Parties were defrauding Government funded health insurance programs. Relator alleged that the Hospitals were knowingly submitting claims for services that should have been performed on an outpatient basis as if they were more expensive inpatient services.  Relator alleged that the Hospitals were

2

improperly submitting claims for outpatient surgical procedures using inpatient DRG codes.

Relator also alleged that the Hospitals submitted claims for short-term outpatient visits (visits

that should last less than 24 hours and should be coded as "patient observation" services) as if

they required an overnight hospital stay, therefore qualifying the service as an inpatient service.

Relator alleged that these practices violated  the Federal False Claims Act, 31 U.S.C. §§ 3729, *et*

*seq.* ("FCA") and the Texas Medicaid Fraud Prevention Act, Tex. Hum. Res. Code Ann.

§ 36.001, *et seq.*

      D.      The United States contends that the Hospitals submitted false claims and made

false statements to the United States in connection with claims that the Hospitals submitted to

the United States under the Medicare Program, Title XVIII of the Social Security Act, 42 U.S.C.

§§ 1395 *et seq.* (Medicare Program) and the Medicaid Program, Title XIX of the Social Security

Act, 42 U.S.C. §§ 1396 *et seq.* (Medicaid Program).

      E.      Texas contends that the Hospitals submitted false claims and made false

statements to Texas in connection with claims that the Hospitals submitted to Texas under the

Medicaid Program in violation of the Texas Medicaid Fraud Prevention Act, Tex. Hum. Res.

Code. Ann. §36.001 *et seq.*

      F.      The Government contends that it has certain civil and administrative claims, as

specified in Sections III.2, III.3 and III.5 below, against the CHRISTUS Parties for engaging in

the following conduct:

> The Government contends that from November 19, 2003 to
> November 18, 2009, the Hospitals submitted claims to the Federal
> healthcare programs for outpatient surgical procedures using
> inpatient DRG codes which resulted in an increased reimbursement.
> The Government also contends that from November 19, 2003 to

3

November 18, 2009, the Hospitals submitted claims for short-term outpatient visits - visits that should last less than 24 hours and be coded as "patient observation" services - as if those visits required an overnight hospital stay, therefore qualifying the service as an inpatient service for the purposes of increasing reimbursement. The Government contends that this conduct violated both the Federal False Claims Act, 31 U.S.C. §§ 3729, *et seq.* ("FCA") and the Texas Medicaid Fraud Prevention Act ("MFPA"), Tex. Hum. Res. Code Ann. § 36.001, *et seq.*

The conduct described in this Paragraph is hereinafter referred to as the "Covered Conduct."

G.    The CHRISTUS Parties deny any liability for the claims specified in the Covered Conduct.

H.    This Settlement Agreement is neither an admission of liability by the CHRISTUS Parties, nor a concession by the Government that its claims are not well founded.

I.    Relator claims entitlement to a share of the proceeds of this Agreement and to Relator's reasonable expenses, attorneys' fees, and costs under 31 U.S.C. § 3730(d).

To avoid the delay, uncertainty, inconvenience, and expense of protracted litigation of the above claims, and in consideration of the mutual promises and obligations of this Agreement, the Parties agree and covenant as follows:

III.
TERMS AND CONDITIONS

1.    The CHRISTUS Parties agree to pay to the United States $5,100,481.74 (Five Million One Hundred Thousand Four Hundred Eighty-One Dollars and Seventy-Four Cents) ("Settlement Amount"). From the Settlement Amount, the United States will pay Relator

4

$1,020,096.35 (One Million Twenty Thousand Ninety-Six Dollars and Thirty-Five Cents) (Relator's Share). The United States will pay to Texas $329,104.00 (Three Hundred Twenty Nine Thousand One Hundred-Four Dollars and Zero Cents), which is the Medicaid portion of the Settlement Amount, less Texas' portion of the Relator's Share. The CHRISTUS Parties also agree to pay to the Relator's counsel in this matter $145,355.43 (One Hundred Forty Five Thousand Three Hundred Fifty-Five Dollars and Forty-Three Cents) (Relator's Attorney's Fees) for Relator's reasonable expenses, attorney's fees and attorney's costs related to the matters covered by this Agreement as agreed to by the CHRISTUS Parties and the Relator. The foregoing payments will be made as follows:

        a.      The CHRISTUS Parties agree to pay the Settlement Amount to the United States by electronic funds transfer, pursuant to written instructions provided by the United States Attorney's Office for the Southern District of Texas, within ten (10) business days of the later date of: (i) the Effective Date of this Agreement, or (ii) receipt of the written wire instructions from the United States Attorney's Office for the Southern District of Texas.

        b.      Contingent upon the United States receiving the Settlement Amount from the CHRISTUS Parties, and as soon as feasible after receipt of the Settlement Amount, the United States will pay to Texas $329,104.00 (Three Hundred Twenty Nine Thousand One Hundred-Four Dollars and Zero Cents), which is the Medicaid portion of the Settlement Amount, less Texas' portion of the Relator's Share, by electronic funds transfer, pursuant to written wire instructions provided by Texas to the United States Attorney's Office for the Southern District of Texas.

        c.      Contingent upon the United States receiving the Settlement Amount from

5

the CHRISTUS Parties, and as soon as feasible after receipt of the Settlement Amount, the United States will pay Relator's Share to Relator by electronic funds transfer, through her counsel, pursuant to written wire instructions provided to the United States Attorney's Office for the Southern District of Texas by Relator's counsel.

      d.      Within ten business days of the CHRISTUS Parties paying the Settlement Amount to the United States under Paragraph 1.a, the CHRISTUS Parties will pay, by electronic funds transfer pursuant to written instructions provided by the Relator's counsel identified below, the Relator's Attorney's Fees.

      2.      Subject to the exceptions in Paragraph 7 (concerning excluded claims) below, in consideration of the obligations of the CHRISTUS Parties in this Agreement, conditioned upon the CHRISTUS Parties' full payment of the Settlement Amount, and subject to Paragraph 17 below (concerning bankruptcy proceedings commenced within 91 days of the Effective Date of this Agreement or any payment made under this Agreement), the United States (on behalf of itself, its officers, agents, agencies, and departments) agrees to release the CHRISTUS Parties from any civil or administrative monetary claims the United States has or may have for the Covered Conduct under the False Claims Act, 31 U.S.C. §§ 3729-3733; the Civil Monetary Penalties Law, 42 U.S.C. § 1320a-7a; the civil monetary penalty provision at 42 U.S.C. § 1395nn(g)(3); the Program Fraud Civil Remedies Act, 31 U.S.C. §§ 3801-3812; or the common law theories of payment by mistake, unjust enrichment, and fraud.

      3.      Subject to the exceptions in Paragraph 7 (concerning excluded claims) below, in consideration of the obligations of the CHRISTUS Parties in this Agreement, conditioned upon the CHRISTUS Parties' full payment of the Settlement Amount, and subject to Paragraph 17

below (concerning bankruptcy proceedings commenced within 91 days of the Effective Date of this Agreement or any payment made under this Agreement), Texas (on behalf of itself, its officers, agents, agencies, and departments) agrees to release the CHRISTUS Parties from any civil or administrative monetary claims Texas has or may have for the Covered Conduct under the Texas Medicaid Fraud Prevention Law, Tex. Hum. Res. Code Ann. § 36.001 *et seq.*; or the common law theories of payment by mistake, unjust enrichment, and fraud.

4.      Subject to the exceptions in Paragraph 7 (concerning excluded claims) below, in consideration of the obligations of the CHRISTUS Parties in this Agreement, conditioned upon the CHRISTUS Parties' payment of the Settlement Amount and the Relator's Attorney's Fees, and subject to Paragraph 17 below (concerning bankruptcy proceedings commenced within 91 days of the Effective Date of this Agreement or any payment made under this Agreement), Relator, for herself and for her heirs, successors, attorneys, agents, and assigns, agrees to fully and finally release the CHRISTUS Parties, together with their current and former parent corporations, direct and indirect subsidiaries, brother or sister corporations, divisions, current or former owners, as well as all employees, agents, officers, directors, affiliates, and the successors and assigns of the CHRISTUS Parties (collectively, "the CHRISTUS Releasees") from any civil monetary claim the Government has or may have under the False Claims Act, 31 U.S.C. §§ 3729-3733 and the Texas Medicaid Fraud Prevention Law, Tex. Hum. Res. Code Ann. § 36.001 *et seq.*, and to release the CHRISTUS Releasees from any and all claims, losses, liens, demands, causes of action, obligations, damages, costs, expenses, attorneys' fees, judgments, and liabilities of any kind, whether in law or equity, fixed or contingent, presently known or unknown, suspected or unsuspected, contingent or non-contingent, that the Relator, for herself and for her

7

heirs, successors, attorneys, agents, and assigns, has, had in the past, or may have in the future against the CHRISTUS Releasees (jointly or severally), arising from the beginning of time through the Effective Date of this Agreement, whether for themselves or on behalf of any other person or entity.

5.      OIG-HHS expressly reserves all rights to institute or to maintain any administrative action seeking exclusion against the CHRISTUS Parties and/or their officers, directors, and employees from Medicare, Medicaid, and all other Federal health care programs (as defined in 42 U.S.C. § 1320a-7b(f)) under 42 U.S.C. § 1320a-7(a) (mandatory exclusion), or 42 U.S.C. §1320a-7(b) or 42 U.S.C. §1320a-7a (permissive exclusion).

6.      Except for such obligations, rights, or claims as may be created by or arise from the terms and conditions of this Agreement, the CHRISTUS Parties fully and finally release the Relator, the Relator's attorneys, and the Relator's employees, servants, and agents (collectively, "the Relator Releasees") from any and all claims, losses, liens, demands, causes of action, obligations, damages, costs, expenses, attorneys' fees, judgments, and liabilities of any kind or nature whatsoever, whether in law or in equity, fixed or contingent, presently known or unknown, suspected or unsuspected, contingent or non-contingent, that the CHRISTUS Parties have, had in the past, or may have in the future against the Relator Releasees (jointly or severally), arising from the beginning of time through the Effective Date of this Agreement, whether for themselves or on behalf of any other person or entity.

7.      Notwithstanding any term of this Agreement, specifically reserved and excluded from the scope and terms of this Agreement as to any entity or person (including the CHRISTUS Parties and the Relator) are the following claims of the Government:

8

a.    Any civil, criminal, or administrative liability arising under Title 26, U.S. Code (Internal Revenue Code) or the Texas Tax Code;

b.    Any criminal liability;

c.    Any administrative liability, including mandatory exclusion or permissive exclusion, from any Federal health care programs or the Texas Medicaid Program;

d.    Any liability to the Government (or its agencies) for any conduct other than the Covered Conduct;

e.    Any liability based upon such obligations as are created by this Agreement;

f.    Any liability of individuals, including current or former directors, officers, employees, agents, or shareholders of any of the CHRISTUS Parties; or

g.    Any civil or administrative liability of individuals (including current or former directors, officers, employees, agents, or shareholders of any of the CHRISTUS Parties) who receive written notification that they are the target of a criminal investigation (as defined in the United States Attorneys' Manual), are indicted, charged, or convicted, or who enter into a plea agreement related to the Covered Conduct.

8.    Relator and her heirs, successors, attorneys, agents, and assigns agree not to object to this Agreement and agree and confirm that this Agreement is fair, adequate, and reasonable under all the circumstances, pursuant to 31 U.S.C. § 3730(c)(2)(B) and, conditioned upon receipt of Relator's Share, Relator, for herself individually, and for her heirs, successors, agents, and assigns, fully and finally releases, waives, and forever discharges the Government, its officers, agents, and employees, from any claims arising from or relating to 31 U.S.C. § 3730

9

and/or the Texas Medicaid Fraud Prevention Law, Tex. Hum. Res. Code Ann. § 36.001 *et seq.*;
from any claims arising from the filing of the Civil Action; and from any other claims for a share
of the Settlement Amount; and in full settlement of any claims Relator may have under this
Agreement.  This Agreement does not resolve or in any manner affect any claims the United
States has or may have against the Relator arising under Title 26, U.S. Code (Internal Revenue
Code), or any claims arising under this Agreement.

9.    The CHRISTUS Parties waive and shall not assert any defenses the CHRISTUS
Parties may have to any criminal prosecution or administrative action relating to the Covered
Conduct that may be based in whole or in part on a contention under the Double Jeopardy Clause
in the Fifth Amendment of the Constitution, or under the Excessive Fines Clause in the Eighth
Amendment of the Constitution.  Nothing in this paragraph or any other provision of this
Agreement constitutes an agreement by the United States concerning the characterization of the
Settlement Amount for purposes of the Internal Revenue laws, Title 26 of the United States
Code.

10.    The CHRISTUS Parties fully and finally release the Government, its agencies,
employees, servants, and agents from any claims (including attorney's fees, costs, and expenses
of every kind and however denominated) that the CHRISTUS Parties have asserted, could have
asserted, or may assert in the future against the Government, its agencies, employees, servants,
and agents, related to the Covered Conduct and the Government's investigation and prosecution
thereof.

11.    The Settlement Amount shall not be decreased as a result of the denial of claims
for payment now being withheld from payment by any Medicare or Texas Medicaid carrier or

intermediary or any state payer, related to the Covered Conduct; and the CHRISTUS Parties agree not to resubmit to any Medicare or Texas Medicaid carrier or intermediary or any state payer any previously denied claims related to the Covered Conduct, and agrees not to appeal any such denials of claims.

 12. The CHRISTUS Parties agree to the following:

  a. <u>Unallowable Costs Defined</u>:  that all costs (as defined in the Federal Acquisition Regulation, 48 C.F.R. § 31.205-47; and in Titles XVIII and XIX of the Social Security Act, 42 U.S.C. §§ 1395-1395hhh and 1396-1396v; and the regulations and official program directives promulgated thereunder) incurred by or on behalf of the CHRISTUS Parties, their present or former officers, directors, employees, shareholders, and agents in connection with the following shall be "Unallowable Costs" on Government contracts and under the Medicare Program, Medicaid Program, TRICARE Program, and Federal Employees Health Benefits Program (FEHBP):

  (1) the matters covered by this Agreement;

  (2) the Governments' audit(s) and civil and any criminal investigation(s) of the matters covered by this Agreement;

  (3) the CHRISTUS Parties' investigation, defense, and corrective actions undertaken in response to the Government's audit(s) and civil and any criminal investigation(s) in connection with the matters covered by this Agreement (including attorney's fees, if any);

  (4) the negotiation and performance of this Agreement; and

  (5) the payment the CHRISTUS Parties make to the Government pursuant to

this Agreement and any payments that the CHRISTUS Parties may make to Relator, including costs and attorneys fees, if any.

   b. <u>Future Treatment of Unallowable Costs:</u>  These unallowable costs shall be separately determined and accounted for by the CHRISTUS Parties and the CHRISTUS Parties shall not charge such unallowable costs directly or indirectly to any contracts with the United States or any State Medicaid program, or seek payment for such unallowable costs through any cost report, cost statement, information statement, or payment request submitted by the CHRISTUS Parties or any of their general or limited partners, subsidiaries or affiliates to the Medicare, Medicaid, TRICARE, or FEHBP Programs.

   c. <u>Treatment of Unallowable Costs Previously Submitted for Payment</u>:  The CHRISTUS Parties further agree that within 90 days of the Effective Date of this Agreement they shall identify to applicable Medicare and TRICARE fiscal intermediaries, carriers, and/or contractors, and Medicaid and FEHBP fiscal agents, any unallowable costs (as defined in this Paragraph) included in payments previously sought from the United States, or any State Medicaid program, including, but not limited to, payments sought in any cost reports, cost statements, information reports, or payment requests already submitted by the CHRISTUS Parties or any of their general or limited partners, subsidiaries or affiliates, and shall request, and agree, that such cost reports, cost statements, information reports, or payment requests, even if already settled, be adjusted to account for the effect of the inclusion of the unallowable costs. The CHRISTUS Parties agree that the United States, at a minimum, shall be entitled to recoup from the CHRISTUS Parties any overpayment plus applicable interest and penalties as a result

of the inclusion of such unallowable costs on previously-submitted cost reports, information reports, cost statements, or requests for payment.

Any payments due after the adjustments have been made shall be paid to the United States pursuant to the direction of the Department of Justice and/or the affected agencies. The Government reserves its right to disagree with any calculations submitted by the CHRISTUS Parties or any of their general or limited partners, subsidiaries or affiliates on the effect of inclusion of unallowable costs (as defined in this Paragraph) on the CHRISTUS Parties or any of their general or limited partners, subsidiaries or affiliates' cost reports, cost statements, or information reports.

d.      Nothing in this Agreement shall constitute a waiver of the rights of the Government to audit, examine, or re-examine the CHRISTUS Parties' books and records to determine that no unallowable costs have been claimed in accordance with the provisions of this Paragraph.

13.     The CHRISTUS Parties agree to cooperate fully and truthfully with the Government's investigation of individuals and entities not released in this Agreement.  Upon reasonable notice, the CHRISTUS Parties shall encourage, and agree not to impair, the cooperation of their directors, officers, and employees, and shall use their best efforts to make available, and encourage the cooperation of former directors, officers, and employees for interviews and testimony, consistent with the rights and privileges of such individuals.  The CHRISTUS Parties agree to furnish to the Government complete and unredacted copies of all documents, reports, memoranda of interviews, and records in their possession, custody, or control concerning any investigation that the Government may have undertaken, or that has been

performed by their counsel or other agent(s), unless such material is covered by a valid claim of privilege.

14.    This Agreement is intended to be for the benefit of the Parties only. The Parties do not release any claims against any other person or entity, except to the extent provided for in Paragraphs 2, 3, 4, 10 and 15 (waiver for beneficiaries paragraph), below.

15.    The CHRISTUS Parties agree that they waive and shall not seek payment for any of the health care billings covered by this Agreement from any health care beneficiaries or their parents, sponsors, legally responsible individuals, or third party payors based upon the claims included in or resulting from the Covered Conduct.

16.    The CHRISTUS Parties warrant that they have reviewed their financial situations and that they are currently solvent within the meaning of 11 U.S.C. §§ 547(b)(3) and 548(a)(1)(B)(ii)(I), and shall remain solvent following payment to the United States of the Settlement Amount. Further, the Parties warrant that, in evaluating whether to execute this Agreement, they (a) have intended that the mutual promises, covenants, and obligations set forth constitute a contemporaneous exchange for new value given to the CHRISTUS Parties, within the meaning of 11 U.S.C. § 547(c)(1); and (b) conclude that these mutual promises, covenants, and obligations do, in fact, constitute such a contemporaneous exchange. Further, the Parties warrant that the mutual promises, covenants, and obligations set forth herein are intended to and do, in fact, represent a reasonably equivalent exchange of value that is not intended to hinder, delay, or defraud any entity to which the CHRISTUS Parties were or became indebted to on or after the date of this transfer, within the meaning of 11 U.S.C. § 548(a)(1).

17.     If within 91 days of the Effective Date of this Agreement or of any payment made under this Agreement, the CHRISTUS Parties commence, or a third party commences, any case, proceeding, or other action under any law relating to bankruptcy, insolvency, reorganization, or relief of debtors (a) seeking to have any order for relief of the CHRISTUS Parties' debts, or seeking to adjudicate the CHRISTUS Parties as bankrupt or insolvent; or (b) seeking appointment of a receiver, trustee, custodian, or other similar official for the CHRISTUS Parties or for all or any substantial part of the CHRISTUS Parties' assets, the CHRISTUS Parties agree as follows:

a.     The CHRISTUS Parties' obligations under this Agreement may not be avoided pursuant to 11 U.S.C. § 547, and the CHRISTUS Parties shall not argue or otherwise take the position in any such case, proceeding, or action that: (i) the CHRISTUS Parties' obligations under this Agreement may be avoided under 11 U.S.C. § 547; (ii) the CHRISTUS Parties were insolvent at the time this Agreement was entered into, or became insolvent as a result of the payment made to the United States; or (iii) the mutual promises, covenants, and obligations set forth in this Agreement do not constitute a contemporaneous exchange for new value given to the CHRISTUS Parties.

b.     If the CHRISTUS Parties' obligations under this Agreement are avoided for any reason, including, but not limited to, through the exercise of a trustee's avoidance powers under the Bankruptcy Code, the Government, at its sole option, may rescind the releases in this Agreement and bring any civil and/or administrative claim, action, or proceeding against the CHRISTUS Parties for the claims that would otherwise be covered by the releases provided in Paragraphs 2 & 3, above.  The CHRISTUS Parties agree that (i) any such claims, actions, or

15

proceedings brought by the Government (including any proceedings to exclude any of the CHRISTUS Parties from participation in Medicare, Medicaid, or other Federal health care programs) are not subject to an "automatic stay" pursuant to 11 U.S.C. § 362(a) as a result of the action, case, or proceedings described in the first clause of this Paragraph, and the CHRISTUS Parties shall not argue or otherwise contend that the Governments' claims, actions, or proceedings are subject to an automatic stay; (ii) the CHRISTUS Parties shall not plead, argue, or otherwise raise any defenses under the theories of statute of limitations, laches, estoppel, or similar theories, to any such civil or administrative claims, actions, or proceeding that are brought by the Government within 90 calendar days of written notification to the CHRISTUS Parties that the releases have been rescinded pursuant to this Paragraph, except to the extent such defenses were available on February 29, 2008; and (iii) the Government has a valid claim against the CHRISTUS Parties in the amount of $16,310,627.00, which represents three times the amount the Government alleges to be overpayment, plus statutory fines and penalties, resulting from the Covered Conduct, and the Government may pursue its claim in the case, action, or proceeding referenced in the first clause of this Paragraph, as well as in any other case, action, or proceeding.

      c.     The CHRISTUS Parties acknowledge that their agreements in this Paragraph are provided in exchange for valuable consideration provided in this Agreement.

      18.     Upon receipt of the payments described in Paragraph 1, above, the Government and Relator shall promptly sign and file in the Civil Action a Joint Stipulation of Dismissal with prejudice of the Civil Action pursuant to the terms of the Agreement. The United States will move to unseal the lawsuit.

16

19.    Except as expressly provided to the contrary in this Agreement, each Party shall bear its own legal and other costs incurred in connection with this matter, including the preparation and performance of this Agreement.

20.    The CHRISTUS Parties represent that this Agreement is freely and voluntarily entered into without any degree of duress or compulsion whatsoever.

21.    Relator represents that this Agreement is freely and voluntarily entered into without any degree of duress or compulsion whatsoever.

22.    This Agreement is governed by the laws of the United States.  The Parties agree that the exclusive jurisdiction and venue for any dispute arising between and among the Parties under this Agreement is the United States District Court for the Southern District of Texas.

23.    For purposes of construction, this Agreement shall be deemed to have been drafted by all Parties to this Agreement and shall not, therefore, be construed against any Party for that reason in any subsequent dispute.

24.    This Agreement constitutes the complete agreement between the Parties.  This Agreement may not be amended except by written consent of the Parties.

25.    The individuals signing this Agreement on behalf of each of the CHRISTUS Parties represent and warrant that they are authorized to execute this Agreement on behalf of the entity for which they sign this Agreement.  The individual signing this Agreement on behalf of Relator represents and warrants that he is authorized by Relator to execute this Agreement.  The United States and the State of Texas signatories represent that they are signing this Agreement in their official capacities and that they are authorized to execute this Agreement.

17

26.    This Agreement may be executed in counterparts, each of which constitutes an original and all of which constitute one and the same Agreement.

27.    This Agreement is binding on the CHRISTUS Parties' successors, transferees, heirs, and assigns.

28.    This Agreement is binding on Relator's successors, transferees, heirs, and assigns.

29.    All Parties consent to the Government's disclosure of this Agreement, and information about this Agreement, to the public.

30.    This Agreement is effective on the date of signature of the last signatory to the Agreement (Effective Date of this Agreement).  Facsimiles of signatures shall constitute acceptable, binding signatures for purposes of this Agreement.

THE UNITED STATES OF AMERICA

KENNETH MAGIDSON
United States Attorney

DATED: 4-13-12    BY: _____
ANDREW A. BOBB
Assistant United States Attorney
Southern District of Texas

DATED: 4/10/12    BY: _____
GREGORY E. DEMSKE
Chief Counsel
Office of Counsel to the Inspector General
Office of Inspector General
United States Department of Health and Human
Services

19

<u>THE STATE OF TEXAS</u>

GREG ABBOTT
Texas Attorney General

DATED: 4/12/12                BY: _____

RAYMOND C. WINTER
Chief, Civil Medicaid Fraud Section
Texas Attorney General's Office


DATED: _____        BY: _____

THOMAS SUEHS
Commissioner
Texas Health and Human Services
Commission

20

THE DEFENDANTS

DATED: 4/4/12          BY: _____

JEFF LAYNE
Fulbright & Jaworski, L.L.P.
Counsel for:
    CHRISTUS Health
    CHRISTUS Spohn Health System Corporation
    CHRISTUS Spohn Hospital Corpus Christi -
        Shoreline
    CHRISTUS Spohn Hospital Corpus Christi -
        Memorial
    CHRISTUS Spohn Hospital Corpus Christi -
        South
    CHRISTUS Spohn Hospital Alice
    CHRISTUS Spohn Hospital Beeville
    CHRISTUS Spohn Hospital Kleberg

DATED 4/5/12          BY: _____

Pamela S. Robertson
President and CEO
CHRISTUS Spohn Health System Corporation

21

<u>THE RELATOR</u>

DATED: 4/3/12                    BY: _____
                                     CECILIA GUARDIOLA
                                     Relator


DATED: 4/4/12                    BY: _____
                                     MITCH KREINDLER
                                     Kreindler & Associates
                                     Attorney for Relator